Good morning, your honors. May it please the court, Michael Vibile for the appellant's side. I'd like to reserve five minutes for rebuttal, if I may. You may. I'll help you. Thank you, your honor. This is the second time that we've been before this court, and again, following what we submit as an erroneous grant of summary judgment. And in this case, we submit that the same results should be remanded back to the district court for a trial on its merits. The primary grounds for the court's determination was its determination on hotly disputed facts that as a matter of law, the appellant's, as insureds, made a material misrepresentation on the application for insurance. The two questions are obviously well known to the court at this point. Were any structural alterations contemplated? Was any demolition exposure contemplated? Well, I kind of have to ask the obvious question here. Why should the appellant be permitted to obtain a malpractice award based on the same premise that late tender was prejudicial and then turn around and attempt to recover against their insurer by taking the opposite position? Well, the malpractice decision didn't make any determination with regard to late tender being prejudicial to the insurance company. The prejudice that inured to the appellants in this case in the malpractice case was, quite frankly, the failure to tender the case subjected the insured to the MRPOD decision that was in place before. Because recall, at the time the malpractice case went to arbitration, the finding as of that time was that the MRPOD case had knocked the care of the insured out of having coverage for the claim. And so the prejudice was, even though we submitted the MRPOD decision was wrong in terms of how the court applied it, the insured found itself in a position where coverage had been thrown out. It wasn't until after the arbitration decision that, in fact, this court ruled that the district court was wrong and that there was coverage under the policy. So there hasn't been any inconsistent positions taken with anyone. The insured was, at the time of the arbitration proceeding, put in a position where there was no coverage. But, in fact, there is coverage under the policy. Now, that gets into a whole different analysis when we talk about whether the insurance company is entitled to utilize that as an offset or to say that there are no damages. And that gets into the collateral contracts doctrine that we addressed in the papers and submit that under that doctrine of law the insurance company does not have the ability to point to a recovery from somebody else. The fact that the insured has collateral contracts or obligations owed to it by its attorney has nothing to do with Century's obligation in the first instance to indemnify it. Let's go back to your argument about the materiality of the two questions. Because I am troubled by a couple of things. The record seems pretty clear that, from the underwriter's standpoint, it's important for them to know whether or not the putative insured is intending to make major alterations to the premises. And that may affect premium. It may affect whether they write the policy at all. It can trigger all sorts of consequences. And then we have the facts that, on the same day that the questions are answered, Mr. Blackburn and the corporation send out the termination letters. And the record, to me, seems beyond dispute that at the time he applied for the insurance, he fully intended to convert the building. And or deconstruct it down to its core. Which would have required alterations in the premises. I'm having a hard time buying your argument, A, that it wasn't material, and, B, that he didn't lie. Let me address that. It's a temporal issue. It's when is this going to happen. My question, though, asks, do you contemplate? Which is about as broad a way that I can think of. I mean, I'm a word merchant. I make my living doing this. I can't think of a synonym that I would substitute for contemplate that would be broader. Well, it's not really the contemplate that really creates the ambiguity within the context of this question. I don't find it ambiguous, counsel. What's ambiguous about contemplate? Because you can't do that work the same day and start it the same day without contemplating it the same day. But, again, it has to be interpreted within the context of the insurance it's being applied for. He's applying for, and by the way, this is, again, in the record, and we pointed this out. All of these applications were submitted to an agent, A and S, which was the agent. The insurance submitted applications for a course of construction policy, for a commercial general liability policy, and for a property policy. And submitted all of this information to the agent. It's clear that he's looking for various types of insurance. As to this particular policy, and that's what's important, it has to be relevant and material to the policy, to the risks being underwritten by the insurer. But the only policy that he, correct me if I'm wrong, I thought the only policy that he was applying for on May 15th of 2003 was a commercial general liability policy for the premises. The record that we submitted, and we cited the appellant's excerpts, volume 5, I think it's page 999, is also an application for a course of construction that was right at the same time. Because, again... Well, what did he apply for, what, six months before? I'm not sure that it was, and I don't have... I think it was, and that's the policy you're talking about. Well, in any case, the agent... I only saw one policy on May 15th, and that was the CGL policy. The only policy that was procured on May 15th was, in fact, the CGL insurance policy. That's the question that, I mean, the questions were posed on the application for that insurance policy. And the insurer has explained why the no answer was provided. It was not going to happen during the course of this policy. Well, but the policy was issued for the period May 15, 2003 to May 15, 2004, and on the same day that the policy went into effect, he issues the letters telling all of the tenants, get out of the building because we're going to start tearing the place apart. Correct, because insurance policies are issued on an annualized basis. If they are later canceled, then there's a refund of unused premium. But that doesn't make the question either less material or the answer more truthful. But it is less material. It is immaterialized in it. That there is potential demolition exposure or structural alterations that are going to be made at some date in the future long after the tenants are gone. Well, why are the tenants gone? The tenants are gone because it's contemplated that work is going to be done. Otherwise, there's no reason to evict the tenants. Not until they're gone is the point. This is a commercial general liability policy. But he's given us 30 days' notice, counsel, and there's another 11 months left to run on the CGL policy. That's where you get no rent. Correct. You're not going to be doing something that would make your property more valuable. Correct. And if things had gone as the insured intended, the tenants would have been gone in 30 days. This policy would have terminated. There would have been a course of construction policy put in place, which is what ultimately happened when the demolition occurred. But this course increased the risk to the insurer as demonstrated by exactly this case. It was the eviction of the tenants because of the contemplated construction in the future that caused this claim. Why isn't the insurer entitled to know the course that's contemplated in the future, which increased the risk from this coverage? They didn't ask, are you intending to evict the tenants? Do you intend to? No, they asked, did you contemplate alteration? And your client answered no, but, in fact, the truth was yes, and that involved evicting the tenants and increasing the risk to the insurers. You're telling me that your client interpreted this question and what he thought the insured would be interested in. But where is the law that says it's up to your client to decide what the insured is interested in? What the law says is how does the insured reasonably apprehend the question. We have a commercial landlord who has applied for this kind of insurance before who gets a question like this, am I going to be demolishing anything? Am I going to be making structural alterations? He knows that it's not going to occur during the course of that particular policy. Maybe the answer should have been yes, but, instead of no. Or not now. Maybe the question should have been, well, I submit maybe the question should have been, are any structural alterations contemplated ever? Because, again, the Riordan case that we've cited to analyzed a very similar circumstance, talking about cigarette smoke, and the lack of a single question, a single word, which was have you smoked any cigarettes? And the court found it significant that the word any wasn't in there because the insured couldn't reasonably believe. That case also involved some guidance by the agent. Is there anything like that here? Was there any inquiry made by your client or the insurance agent as to whether this is meant to cover only the expected tenure of the insurance or whether it's a broader question? Well, again, I submit that the record shows that with regard to that. My question is simple. Is there any evidence here of inquiry to the agent or to the insurer as to what this question means? There's none in the record. But looking at the question. Well, doesn't that distinguish the case from the cigarette case? I don't believe that it does when you're talking about interpreting ambiguity within insurance policies. Because, again, the issue is does a reasonable insured reasonably apprehend the question and what the information is that's being sought by the question? And, again, we have a disputed issue of fact here. And from our perspective, we believe it's important that the district court in its response to this testimony indicated that, quote, for the first time during this litigation, Mr. Blackburn has advanced this position. Well, the first time, the reason it was the first time is this was a late added claim. This claim for rescission wasn't added until just before the summary judgment motion was granted and after it had been briefed in the first case. There was no reason for Mr. Blackburn, who, by the way, the court has never met and never heard from Mr. Blackburn. This particular court has never heard from me. We've never had the opportunity to orally argue before this court after two summary judgment motions. This isn't something that should be resolved on a cold record without hearing from the insurer, hearing the testimony, seeing the evidence, listening to the information that was provided to the insurer. I guess we have to decide, based on the state of the record, whether there is a material dispute over this fact. And, again, I'm having a hard time looking at the state of the record that is presented to us, seeing how any reasonable jury could determine this issue any other way than to say it was material and he lied. And, again, because it's immaterial when it doesn't affect the risks undertaken by the insurer. I hear your argument. Did you want to save some time for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the court, my name is Maria Cousineau, and along with my co-counsel, Douglas Colladel, we represent Century Surety Company. Those two questions are, in fact, material. Mr. Blackburn answered no to both of them. Well, didn't Century know that there had been substantial damage to the building when it issued the policy? And, if so, why doesn't that preclude rescission? No, they did not know that there was structural renovations that were planned, and that's what's pertinent to this application. They did not know that Mr. Blackburn intended to convert these to residential condos from the commercial unit. Was it aware of a water loss that had occurred? Arguably so. But that doesn't impact his plans to convert this building from a commercial building to the residential. How is that material? If the policy isn't going to cover what happens at that point, how is that material to his policy? I'm not sure I understand what you mean that the policy isn't going to. Well, the argument by the insured is that the insured answered the question no because he understood that during the period that this policy would be in effect, there wouldn't be construction and alterations. That was something that was going to happen subsequently. Except that that's exactly what did happen. This policy wasn't canceled when the construction started. This policy wasn't canceled when all of the tenants were evicted. The policy stayed in place. So the facts themselves belie that argument, and it is, contrary to my opponent's argument, it isn't Mr. Blackburn's intent. The decision materiality is determined subjectively by its effect on the insurer. And the underwriter's declaration is very clear. Had it known, it would have either certainly would have explored it further, and maybe that was what Your Honor was suggesting. Certainly a yes answer to either of those with an explanation would provide some additional communication so that the insurer could properly write this risk based on what was contemplated. I have a practical question about what you're asking this Court to obviously affirm. And I have a practical question about the effect. If we were to affirm, and I'm saying that hypothetically, the case would effectively be over. Do the appellants keep the arbitration award, and then Century has no liability, and then are you going after them for attorney's fees? Or what's the practical effect of this? I can't. There is already a judgment for the attorney's fees, and there has been no collection efforts. I can't speak to what the company would do in light of the finding that there was, in fact, coverage. Well, except that there is a rescission. So I can't speak to what they would do about the judgment on the fees. But, yes, he would, as far as I'm concerned, I see no option, but he keeps the award from the arbitration. And he has, in fact, been made whole that way. This Court pointed out, he has judicially stopped from arguing a new position here. That late tender was, in fact, the reason that the one of the reasons, it wasn't all, but that was one of the reasons for the award, the malpractice award against Dukor. And that launches into the whole issue of this late tender, because Century was never given an opportunity to control the defense, wasn't allowed, wasn't even given the opportunity to appoint counsel that might be the appropriate counsel to defend this case. But how would different counsel have defended this case? Because the facts, as I was exploring with your opponent, don't look very good for Mr. Blackburn. And it's hard to imagine how a better lawyer would have defended the wrongful eviction case. Well, and, in fact, Your Honor, I think that really shows why it's impossible. When you have a post-trial tender, it's virtually impossible for the insurer to ever establish the prejudice or the different outcome. Well, the best argument I thought you made was we might have been able to settle this thing for less than the policy. Absolutely. But, again, that's speculation. It's speculation on both sides. But that's what happens when you go through an entire two-year case, you go through a two-week trial, you get a decision against you, and then you tender to your insurance company. But, you know, Ms. Costner, we go through this exercise all the time in criminal habeas, civil habeas cases of criminal convictions, trying to figure out after the fact whether ineffective assistance of counsel in the criminal case amounted to ineffective assistance of counsel sufficient to set aside the conviction because there was prejudice to the defendant as a result of the misconduct of the lawyer. I mean, we're sort of used to doing that. The problem I'm having here is I just don't see where, I don't know who the best insurance defense lawyer is in the country, but the Johnny Cochran or the F. Lee Bailey of the defense bar. I just don't see what they could have done for Mr. Blackburn on a lawful eviction case. Well, one of the issues that we do raise, and, in fact, surprisingly enough, this was testimony elicited by 350 at that arbitration, and that was there is a possibility settlement negotiations would have resulted and the case would not have gone to trial and resulted in the $800,000 award. That begs a question raised by an appellant in his brief about, well, then Century would have, in fact, paid something. Well, in fact, Century has defended this case for many years and has paid a lot in attorney's fees in doing so. That may have all been moot. That may not have happened at all had there been the appropriate tender at the appropriate time. And the late tender did, in fact, substantially prejudice Century's surety, as the court correctly found. And more importantly, the court felt there was no dispute of a material fact on the issue of the misrepresentation in that application. I do want to point out the course of construction application, as this court noted, is, in fact, six months earlier than the one at issue here. It was not in Century's agent's file. It was, in fact, in the broker's file, in Mr. Blackburn's broker's file. He had that. It was never submitted to Century. It was something that was there. Apparently, he was contemplating six months earlier that this would, in fact, be converted to a residential property, and that just, again, proves that he did, in fact, contemplate any, and I emphasize the word any because that is the word that was missing in O'Riordan. The court said if it's ambiguous, they didn't find the question was ambiguous, but they said perhaps if they had inserted the word any in there, it would have fixed it because then she would have known that five cigarettes in the last six years required a yes answer. That word any is in both of these questions, and so is the word contemplated. It is not contemplated during this policy. It is any construction or any demolition or structural alterations contemplated. And I suggest to this court that the district court was correct in finding, as a matter of law, that those incorrect answers, those false answers of no, were, in fact, a material misrepresentation. So if we find the rescissions to be the correct way to go, then we don't have to get to the other issues? Yes, Your Honor. If there are no further questions, I will submit. All right. Thank you, Your Honor. Thank you. Mr. Bavoli, I think you have just about four minutes left. Thank you. I always hate questions like the last one because it makes it so tempting to find that way. No, just like to understand what everyone's asking and what are all the avenues. I appreciate that, Your Honor. We don't have a dartboard back there thing. Thank you. Let me just address the points counsel just alluded to. Number one, she indicated that it was the structural issues that was really important to the insured. The structural issues that we're talking about was the potential future creation of additional space on the penthouse, converting what was not previously space into new space. It was nothing more than an architect's concept at the time. And to suggest that that is the information that really was critical that was withheld from them, there is no question that that work could not have been done until all the tenants were out of the building because of the nature of that particular work. So to say that the structural issue, which is nothing more than a concept, was material information. So is it your position that when he sent the termination letter to Ms. Hellis and the other tenants and talked about the need to do demolition because the building was now unsafe, that that's what he was referring to? Not to the future structural, no. He's talking about making demolition, I guess you could say in the broadest sense of the word, that there would be demolition within the building itself. That's why he's removing the tenants because he's not going to do it until the tenants are out. Why isn't that covered by question number 13, any demolition exposure contemplated? Because it's demolition exposure contemplated. It's within the policy period. This, again, is a liability policy. It's not a property policy. Demolition exposure means our tenants or business invitees are going to be subjected to or exposed to demolition. But the record shows that they were. That wasn't the expectation at the time this policy was applied for, and that's an important point because counsel mentioned the fact that this policy wasn't canceled. The only reason it wasn't canceled is because the tenants wouldn't leave. The expectation of the insured at the time the policy was applied for was that all of the tenants would leave, the policy would then be terminated, and then demolition would start. But this particular tenant refused to leave, which is what created the problem. But that was not the insured's expectation at the time the application was applied for. The appellants appear to contend that this Court's decision on the prior appeal precludes summary judgment on the basis of late tender. But I think we clarified that the decision did not preclude further factual development. And looking at the record, it doesn't look like the expert testimony from the malpractice arbitration was part of the record on that appeal. Very true. And so why doesn't that testimony qualify as newly developed factual material that could support a finding of substantial prejudice? That's arguably the only new evidence, and you're correct. This Court did make clear that it didn't preclude future, and we submit we agree that that is arguably new testimony. Okay. What the Court talked about in terms of our expert's testimony, they're actually talking about Century's employee who said we may well have engaged in settlement efforts, we may well have tried to settle the case. Again, all that undermines potentially is the amount of damages that Century is obligated to pay. It wouldn't have gotten off for free. It would have had to pay the plaintiff something. So there's a question of fact as to what the damages are. If they want to go to trial and show that there was an opportunity to settle earlier for a lesser sum, then they might arguably establish this is the amount of our damages, not ultimately what was awarded. If the question that's presented to us is simply a question of rescission, then we don't reach that issue, do we? If we decide that these are material and that summary judgment was properly entered, we don't know what's going to happen, if anything, as between your client and the insurance company. That, again, gets back to the earlier point. But I was kind of jumping over that, and I noticed that in your argument. You are out of time. Unless the panel has any other questions, the case will be submitted. Thank you very much. Thank you. The last case, United States v. $671,160 in currency, is submitted, and we are adjourned for the week.
judges: Tallman, Clifton, Callahan